UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROBERT FUENTES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 3:16-cv-893 PPS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Robert Fuentes seeks habeas corpus relief from his state court conviction for murder and unlawful possession of a firearm. Following a jury trial, the Lake Superior Court sentenced Fuentes to fifty-eight years imprisonment on the murder charge and five years consecutive to that on the charge of unlawful possession of a firearm.

**Factual Background**

In deciding this habeas petition, I must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here's how the Court of Appeals of Indiana summarized the evidence presented at trial:

> Shortly before 8:45 p.m. on November 1, 2008, Latanza McFerrin drove her fiancé Ronald Grayson, who stood 5'11" tall and weighed 233 pounds, to a Clark gas station in Lake County. Once there, Grayson went inside so that he could buy a pack of cigarettes. Back outside, Grayson was conversing with his friend Thomas Meadows as the duo

1

stood in front of Grayson's vehicle. About this time, Fuentes, who stood 5'4" tall and weighed approximately 140 pounds, arrived in a burgundy Impala.

Inside the gas station, Fuentes collided with Meadows and exchanged words and a handshake with him. According to Fuentes, he approached the counter to pay for gasoline when Grayson said something to him that he perceived to be unfriendly. Fuentes testified that he felt Meadows and Grayson were attempting to "instigate" something, he felt threatened, he thought it would be best just to leave, and he left the gas station without paying for his gasoline. Fuentes testified that, based on what Grayson said to him, he felt that he "was gonna get f* * * * * up or I had to get out of there someway [sic], somehow."

Fuentes walked to the parking lot, followed by Grayson, who "came directly at him reaching behind his back—behind his shirt, rather." At 8:45:10 p.m., surveillance video shows Fuentes attempting to punch Grayson, a blow that did not land. Grayson backed up and then moved toward Fuentes, who had by this time drawn his illegally-possessed handgun. At 8:45:11 p.m., Fuentes shot Grayson in the left arm. Within two seconds, Grayson went to his knees in the parking lot and raised his arms and hands in front of him. Despite Grayson's now defenseless position, Fuentes shot him again, this time in the chest, killing him.

*Fuentes v. State*, 941 N.E.2d 568 (Ind. Ct. App. 2011); ECF 7-6 at 2-3.

Fuentes argues that he is entitled to habeas corpus relief because the trial court prevented him from presenting a complete defense by issuing an improper jury instruction on self defense. He also alleges ineffective assistance of trial counsel because trial counsel failed to adequately review the video recording of the confrontation and failed to tender a jury instruction on a lesser included offense. He further alleges that ineffective assistance of appellate counsel because appellate counsel failed to adequately review the video recording and failed to submit the video recording to the Court of

2

Appeals. Fuentes has presented these claims to the Indiana Supreme Court and the Court of Appeals of Indiana. ECF 7-3 at 16-27; ECF 7-10; ECF 7-14; ECF 7-18. As such, Fuentes has properly exhausted his State court remedies, and I will consider his claims on the merits. *See* 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

## Discussion

Federal habeas review serves as an important error-correction tool to help ensure the proper functioning of the criminal justice system. But the available relief is very limited. "Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted). Habeas relief can only be granted in one of two ways: if it is shown that the adjudication of the claim by the state court resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or if the state court decision was based "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is a demanding standard that has been described by the Supreme Court as follows: "[This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings ... of this Court's decisions. And an unreasonable application of those holdings must be

objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). To succeed on a habeas claim the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

With these standards in mind I will turn to the various claims for relief asserted by Mr. Fuentes.

### *Self-Defense Jury Instruction*

Fuentes argues that the State court made an objectively unreasonable decision by finding that the erroneous self-defense jury instruction constituted harmless error, which violated his right to the opportunity to present a complete defense. The argument focuses on the instruction's language that states that force is not justified by self-defense for a person involved in the commission of a crime.

4

At trial, the prosecution attempted to prove charges of murder and possession of a firearm without a license. Direct Appeal App. 94. Fuentes testified that he had a gun but did not have a license. Trial Tr. 280-82. Here's what the self-defense instruction said:

It is an issue whether the defendant acted in self-defense.

A person may use reasonably force against another person to protected himself from what he reasonably believes to be the imminent use of unlawful force.

A person is justified in using deadly force and does not have a duty to retreat only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

*However, a person may not use force if he is committing a crime or is escaping after the commission of a crime;* he provokes a fight with another person, with intent to cause bodily injury to that person; or he has entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight.

The State has the burden of disproving the defense of self-defense beyond a reasonable doubt. Before you may find the defendant guilty of the crime charged, you must find beyond a reasonable doubt that the defendant was not acting in self-defense.

Direct Appeal App. 110.

Fuentes takes issue with the italicized language in the instruction quoted above. Under Indiana law, for a commission of a crime to bar self-defense as an affirmative defense, "there must be an immediate causal connection between the crime and the confrontation." *Mayes v. State*, 744 N.E.2d 390, 394 (Ind. 2001). Fuentes' argument is that the omission of the "causal connection" language from the jury instruction together with his admission regarding the unlawful possession charge effectively deprived him

5

of any opportunity at obtaining a favorable verdict. It is true that the self-defense theory was the only defense theory presented at trial. On direct appeal, the appellate court agreed that the "causal connection" language should have been included in the self-defense jury instruction. ECF 7-6 at 5-8. But the appellate court nonetheless denied relief finding that the omission constituted harmless error under Indiana law. *Id.*

Fuentes argues that the erroneous jury instruction deprived him of his constitutional right to a meaningful opportunity to present a complete defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants'a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). "But the cases in which [the Supreme Court of the United States has] invoked this principle dealt with the exclusion of evidence, or the testimony of defense witnesses." *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993). "None of them involved restrictions imposed on a defendant's ability to present an affirmative defense." *Id.* Because the constitutional right to present a complete defense has not been extended to affirmative defenses, Fuentes' claim that the self-defense instruction violated his right to present a complete defense is without merit.

Though Fuentes attempts to cast this claim as a constitutional claim, what he is really saying is that the self-defense instruction was defective under Indiana law. But "the fact that the instruction was allegedly incorrect under state law is not a basis for

6

habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). For such claims, "[t]he only question for [federal courts] is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* "[T]he instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.*

The primary concern with the erroneous self-defense instruction is that it may have caused the jury to believe that they could not find that Fuentes acted in self-defense if they also found that Fuentes unlawfully possessed a gun. However, a review of the trial record belies this assertion. On my reading of the trial transcript it seems highly unlikely that the jury interpreted the self-defense instruction in this manner. First, during closing arguments, the prosecution did not even bother to argue that the unlawful possession of the firearm foreclosed the self-defense theory. Trial Tr. 311-19, 332-35. Rather, the prosecution argued that Fuentes did not act reasonably; that the unlawful possession of the firearm caused the victim's death; and that the recording was critical to the jury's decision on the self defense issue. *Id.* Similarly, defense counsel argued that the recording supported his self defense claim and urged the jury to review the recording.[1] *Id.* at 319-32. The jury heeded that advice; during deliberations, the jury twice asked the trial court to watch the video. *Id.* at 340-44. In other words, the lawyers

---

[1]During closing arguments, trial counsel also implied that the jury could not convict Fuentes of unlawful possession of a firearm if they believed he acted in self-defense. Trial Tr. 328-39.

7

for both sides focused on whether Fuentes' actions were reasonable, and it seems likely that the jury did as well. What seems entirely unlikely is that the jury convicted Fuentes based on a theory that was never argued by either party during the trial. Based on the foregoing, I find that the erroneous self-defense instruction did not infect the trial such that the resulting conviction violated due process. Therefore, Fuentes' claim regarding the erroneous self-defense instruction is not a basis for habeas relief.

### *Video Recording*

Fuentes alleges that the State court made an unreasonable determination by denying his claim that trial counsel was ineffective because trial counsel failed to adequately review the video recording of the confrontation. On appeal, Fuentes argued that he suffered prejudice because the surveillance video shows that the first shot to the victim's chest was fatal, which would have rebutted the prosecution's argument that Fuentes killed the victim as the victim was in a defenseless position. He also argues that trial counsel's failure to adequately review the video prejudiced his claim regarding the self-defense instruction on direct appeal.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689. The test for

prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

A review of the video makes clear that Fuentes shot the victim twice in two seconds. Trial Tr. 314-15; State's Ex. 10.[2] The recording shows that, by the time the second shot was fired, the victim had fallen to his knees with his hands in the air. *Id.* Dr. Young Kim, who performed the autopsy, testified that the victim was shot in the arm, and that this shot would not have been fatal on its own. Trial Tr. at 175, 178. Kim also testified that the victim was shot in the chest, and the bullet ended up lodged in his back. *Id.* at 178. This was the fatal shot. *Id.* The fact that the first shot was the one that went through the victim's arm was corroborated by the fact that Dr. Kim testified about the trajectory of the gunshot. *Id.* at 181-82. Specifically, Dr. Kim testified that the non fatal shot through the arm was on an upward trajectory. Fuentes is 5'4" while his victim was 5'11". *Id.* at 178, 269. This suggests that they were both standing when the shot was fired. *Id.* at 178. By contrast, Dr. Kim testified that the lethal shot through the chest was

---

[2]The respondent has submitted a copy of the recording, which I have reviewed.

9

on a downward trajectory, which is consistent with the victim having been on his knees (having been fallen by the first shot) when the second shot was fired. *Id.* at 181.

During closing arguments, the prosecution argued that Fuentes fired the fatal shot as the victim assumed a defenseless position but also recognized the short duration of the confrontation by referencing the recording's time stamps. *Id.* at 315-18. Defense counsel also emphasized the short duration of the confrontation and challenged the prosecution's characterization of the order of the shots for lack of evidentiary support. *Id.* at 328-32.

On direct appeal, Fuentes presented his argument regarding the self defense instruction, which I discussed previously. The appellate court found that the instruction was erroneous but that it constituted harmless error, reasoning:

> Any instructional error that occurred here was harmless, as we conclude that the jury could not have properly found that Fuentes acted in self-defense when he shot [the victim] a second time. After the first shot, [the victim] went to his knees and put his arms and hands up in a defenseless position. Any threat [the victim] had posed to Fuentes had been neutralized, and Fuentes' right to self-defense therefore ceased. Instead of seeking to disengage at that point, Fuentes stood his ground, kept his weapon trained on [the victim], hesitated a moment, and shot him again. Under the facts of this case, Fuentes' second shot at [the victim] fatally undercuts his claim of self-defense. Any error the trial court committed in instructing the jury was therefore harmless.

ECF 7-6 at 8.

At the evidentiary hearing at the post-conviction relief stage, trial counsel acknowledged that he saw a dust cloud on the video recording that he had not previously noticed and that the dust cloud suggested that the prosecution's

characterization of the order of the shots was erroneous. PCR Tr. 66-67. He further testified that he did not believe that the order of the shots was significant with respect to Fuentes' defense. *Id.* at 32-33. He testified that he instead focused on proving that both shots were fired in self defense and that the jury could have convicted Fuentes regardless of whether the fatal shot happened first or second. *Id.* at 43, 47-49.

On appeal at the post-conviction relief stage, the Court of Appeals of Indiana found that trial counsel did not perform deficiently because he challenged the prosecution's characterization on the order of shots and because the decision not to place more emphasis on the order of shots was a strategic decision. ECF 7-13 at 8-10. The appellate court found no prejudice, reasoning that the jury watched the recording multiple times. *Id.*

After reviewing the record, I cannot conclude that the State courts' decision regarding trial counsel's failure to adequately review the recording was objectively unreasonable. At bottom, Fuentes argues that the fact that the fatal shot came second was dispositive to his self defense claim. However, at trial, neither party argued or implied that one shot was justified and the other shot was not. Rather, the recording, which the jury reviewed several times, demonstrated the rapid succession of the shots, which suggested that either both shots were in self-defense; or neither shot was in self-defense. The direct appeal decision also does not rely on the fact that the fatal shot came second; instead it relies on the undisputed fact that Fuentes shot a second time as the victim was in defenseless position. Because the fact that the fatal shot came second

was likely immaterial to the decisions of the jury and the appellate court, I cannot conclude that the State courts' decision regarding trial counsel's deficient performance or prejudice was objectively unreasonable. Therefore, Fuentes' claim regarding trial counsel's failure to adequately review the recording is not a basis for habeas relief.

Fuentes similarly argues that the State court made an unreasonable determination by denying his claim that appellate counsel was ineffective because appellate counsel failed to review the video recording of the confrontation and failed to submit the recording to the appellate court on direct appeal. The *Strickland* analysis also applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

On appeal at the post-conviction relief stage, the Court of Appeals found that appellate counsel reviewed the video recording based on appellate counsel's testimony at an evidentiary hearing. ECF 7-13 at 11-12. The appellate court also found no prejudice, reasoning that the direct appeal decision did not rely on the fact that the fatal shot came second. *Id.* Because I agree with the appellate court's prejudice analysis, I cannot conclude that the court made an unreasonable determination by denying the ineffective assistance of appellate counsel claim. Therefore, Fuentes' claim regarding appellate counsel is not a basis for habeas relief.

## *Lesser-Included Offense Instruction*

Fuentes argues that the State court made an unreasonable determination by denying his claim that defense counsel was ineffective by failing to tender a jury instruction for a lesser-included offense. He argues that this decision in combination with the erroneous self defense instruction left the jury with no other choice but to find him guilty. At the evidentiary hearing at the post-conviction relief stage, counsel testified that he considered lesser-included offenses, including voluntary manslaughter and reckless homicide, throughout the trial stage and discussed them with Fuentes before trial and at trial. PCR Tr. 60-62. But Fuentes made it clear to him that he wanted to go for broke saying, "I want all or nothing." *Id.* On appeal, the Court of Appeals rejected this claim on the basis that Fuentes had not sufficiently developed his argument regarding the appropriate lesser included offense. ECF 7-13 at 10. In all events, the Lake Superior Court credited trial counsel's testimony and found that the failure to tender an instruction for a lesser included offense was not ineffective assistance of counsel. PCR Appeal App. 116.

After reviewing the record, I cannot conclude that the State courts' decision regarding the instruction for a lesser-included offense was objectively unreasonable. The Lake Superior Court's findings were supported by trial counsel's testimony that he advised Fuentes regarding lesser included offenses several times and that Fuentes rejected them. Additionally, for the reasons I discussed previously, the implication that the jury interpreted the self defense instruction as narrowly as Fuentes suggests is not

supported by the trial record. Therefore, Fuentes' claim that trial counsel failed to tender a jury instruction for a lesser included offense is not a basis for habeas relief.

## Certificate of Appealability

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Fuentes to proceed further. For the same reasons, he may not appeal *in forma pauperis* because an appeal could not be taken in good faith.

Accordingly, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; DENIES leave to appeal *in forma pauperis*; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on April 9, 2018.

/s/ Philip P. Simon
Judge
United States District Court